UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

HUGH KNIGHT, WAYNE STEWART and
SHANNON DICKINSON on behalf of themselves and
all others similarly situated

|  |  |
|---|---|
| Plaintiffs, | 18-cv-7172 |
| v. | **ECF CASE** |

NEW YORK STATE DEPARTMENT OF
CORRECTIONS, a public entity; CARL
KOENIGSMANN, MD; SUSAN MUELLER, MD;
DAVID S. DINELLO, MD; PAULA BOZER, MD;
JOHN HAMMER, MD, CHUNG LEE, MD; and JOHN
DOES, MD #1-#54

**CLASS ACTION
COMPLAINT**

Defendants.

_____

## PRELIMINARY STATEMENT

This a civil rights class action filed by disabled prisoners in the custody of the New

York State Department of Corrections and Community Services ("DOCCS"), challenging prison

policies that deprive them of necessary sterile catheters and the supplies to provide for clean

catheterizations.  The policy restricts the number of sterile catheters a patient receives per day and

demands that patients attempt to sterilize single-use catheters for reuse.  Appropriate sterilization

is impossible due to the uncleanliness of cells, the lack of supplies with which sterilization might

be possible and the fact that the catheters are not meant for more than one use.  This policy directly

causes avoidable UTIs, urosepsis and other extremely painful illnesses in Plaintiffs and class

members.  The resulting avoidable illnesses and pain cause Plaintiffs and members of the Class to

remain bedridden when suffering from a UTI or related infection, excluding them from programs

and services enjoyed by non-disabled prisoners. The lack of clean single-use catheters also means

that Plaintiffs sometimes forego programs and services necessitating long absences from their cells because they do not have a clean, disposable catheter to take. Plaintiffs bring this class action against the New York State Department of Correction and Community Supervision ("DOCCS") itself and against DOCCS employee physicians, Dr. Carl Koenigsmann, Dr. David S. Dinello, Dr. Paula Bozer, Dr. Susan Mueller, Dr. John Hammer, Dr. Chung Lee and Drs. John Doe 1-54,  for injunctive and declaratory relief, as well as monetary damages pursuant to 42 U.S.C § 1983, Title II of the Americans with Disabilities Act of 1990 ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ('Section 504").

## JURISDICTION AND VENUE

1.   This action arises under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. §12101-12132 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*.

2.       The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 (a)(3)-(4) and 1367(a).

3.       The acts complained of occurred in the Southern District of New York and other jurisdictions throughout New York State.  Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

4.       Plaintiffs demand trial by jury in this action.

## THE PARTIES

### Plaintiffs/Proposed Class Representatives

5.       **Hugh Knight** is a 62-year old paraplegic who is currently housed at Shawangunk Correctional Facility, ("Shawangunk") located at 200 Quick Road, Wallkill, NY 12589.

6.     At the time of his incarceration in 1990, Mr. Knight was paraplegic.

7.     DOCCS has housed Mr. Knight in a number of different facilities prior to his current assignment to Shawangunk.

8.     Mr. Knight spends most of his time bound to a wheelchair, but he has regained some mobility which allows him to walk with braces and a cane periodically.

9.     However, Mr. Knight's disability means he still cannot perform many regular life activities such as bathing, showering, getting in and out of bed, getting in and out of his wheelchair, and sometimes, personal mobility.

10.     Mr. Knight also cannot control his bodily functions, including his ability to urinate.

11.     Mr. Knight has been dependent on daily, multiple catheterizations for twenty-eight (28) years.

12.     Mr. Knight is a qualified individual with disabilities under both the ADA and Rehabilitation Acts.

13.     Mr. Knight must have a steady, sterilized supply of catheters – at least 4 to 6 catheters per day.

14.      Mr. Knight must also be able to clean his hands and body parts in order to avoid bacterial transfer that can develop into UTIs.

15.     **Wayne Stewart** has been incarcerated at Shawangunk for sixteen (16) months.

16.     Mr. Stewart is a 39-year-old paraplegic who has been paralyzed since 2002.

17.     Mr. Stewart is wheelchair-bound.

18.     Mr. Stewart's disability limits his ability to perform regular life activities including self-care such as bathing, showering, getting in and out of bed, getting in and out of his wheelchair, and personal mobility.

19.     Mr. Stewart's also suffers from a neurogenic bladder which means he cannot control his bodily functions, including the functions of his bowels and bladder.

20.     Due to his incontinence, Mr. Stewart must utilize catheters to empty his bladder.

21.     As a wheelchair-bound paraplegic who suffers from a neurogenic bladder, Mr. Stewart is a qualified individual with a disability under both the ADA and Rehabilitation Acts.

22.     Mr. Stewart must have a steady, sterilized supply of catheters – at least 4 to 6 catheters per day.

23.     Mr. Stewart must be able to clean his hands and body parts in order to avoid bacterial transfer that can develop into UTIs.

24.     **Shannon Dickinson** is a 45-year-old paraplegic who is currently incarcerated at Green Haven Correctional Facility ("Green Haven"), located at 594 New York 216, Stormville, NY 12582.

25.     Mr. Dickinson has been paralyzed and wheelchair-bound since 1990.

26.     As a result of his paralysis, Mr. Dickinson does not have control over his bladder function, and therefore relies on multiple, daily catheterizations.

27.     Mr. Dickinson is also a qualified individual with disabilities under both the ADA and Rehabilitation Acts.

28.     Mr. Dickinson must have a steady, sterilized supply of catheters – at least 4 to 6 catheters per day.

29.     Mr. Dickinson must be able to clean his hands and body parts in order to avoid bacterial transfer that can develop into UTIs.

**Defendants and State Actors**

30.     **DOCCS** is responsible for the confinement and rehabilitation of approximately 49,500 individuals under custody at approximately 54 state facilities, including the medical care of all inmates in its custody.

31.     DOCCS is a public entity as defined in 42 U.S.C. § 12131 (1)(B).

32.     DOCCS receives state and federal financial assistance.

33.     DOCCS is subject to the requirements of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

34.     **Carl Koenigsmann, MD** is the Chief Medical Director for DOCCS. He is sued in his official capacity.

35.     **Susan Mueller, MD** is a Regional Medical Director ("RMD") and a treating physician at DOCCS. She is sued in her official and individual capacities.

36.     **David S. Dinello, MD** is an RMD and treating physician at DOCCS. He is sued in his official and individual capacities.

37.     **Paula Bozer, MD** is an RMD and treating physician at DOCCS. She is sued in her official and individual capacities.

38.     **John Hammer, MD** is an RMD and treating physician at DOCCS.   He is sued in his official and individual capacities.

39.     **Chung Lee, MD** is the Facility Health Services Director ("FHSD") for DOCCS at Shawangunk. He is sued in his official and individual capacities.

40.     **John Does, MD #1 – #54** are FHSDs and/or treating physicians at NY State DOCCS facilities that house inmates who require multiple daily catheterizations to reasonably accommodate their disabilities.

41.     Doctors Koenigsmann, Dinello, Bozer, Hammer and Mueller are responsible for crafting policies and procedures for medical treatment of patients in DOCCS custody, including overseeing primary care guidelines for treatment.

42.     RMDs personally review all emergency room trips by patients throughout the state, including the reasons for the trip and necessary treatments rendered.

43.     RMDs also personally review and approve recommendations from physicians for patients to see certain specialists.

44.     Doctor Koenigsmann is responsible for reviewing and responding to letters from patients regarding inadequate medical care on the facility level and, arguably, investigates problems and issues letter responses to inmates.

45.     Upon information and belief, many patients in need of multiple sterile catheters per day have written to Dr. Koenigsmann regarding their needs.

46.     Despite these grievances and complaints and awareness of the medical standards, DOCCS, Dr. Carl Koenigsmann, and its RMDs Dinello, Bozer, Hammer and Mueller, endorse and implement a policy that limits the amount of sterile daily catheters to the bare minimum per patient.

47.     The policy is not just bad medicine, it is bad fiscal responsibility.

48.     A single use catheter costs on average 29 cents, or at seven catheters per day, about $2.10 per day, per patient.

49.     The New York State average Medicaid expenditure for hospitalization costs is approximately $3,000.00 per day.

50.     One day of hospitalization for a patient whose UTI has developed into urosepsis or septicemia costs the same as approximately a four (4) year sufficient supply of sterile catheters.

## FACTUAL ALLEGATIONS SPECIFIC TO EACH PLAINTIFF

### Hugh Knight

51.     At Sullivan Correctional Facility ("Sullivan") from approximately 1990-1994, Mr. Knight was given a reasonable supply of catheters per day, surgical gloves for sanitary purposes, cotton swabs, and sterile lubricating jelly.

52.     Mr. Knight must catheterize himself approximately four to six times a day, depending on the time of year and his fluid intake.

53.     With this ready and reasonable supply, Mr. Knight was able to catheterize himself and avoid unnecessary infections, pain and suffering.

54.     Upon his arrival at Shawangunk in 2014, Mr. Knight's catheter supply was cut to one catheter a day and DOCCS did not provide him with any effective disinfectant or gloves.

55.     Mr. Knight has grieved the inadequate supply of catheters he receives per day.

56.     Mr. Knight attempts to clean his one daily catheter with regular soap and water — an inadequate alternative to proper sterilization or a new catheter.

57.     To clean his body parts and prevent the spread of germs from his hands and body parts to the catheter, Mr. Knight has only a washcloth.

58.     Like all inmates, DOCCS provides Mr. Knight with a sole washcloth, exchanged weekly.  The washcloth hangs in his cell as it dries – collecting bacteria and then transferring the bacteria to his body parts when he must reuse the washcloth.

59.     Since at least 2014, Mr. Knight has suffered from several very severe UTIs.

60.     Due to the repeated UTIs and resulting infections, Mr. Knight also suffers from permanent kidney damage.

61.     Dr. Lee, despite knowing Mr. Knight's history of painful UTIs and the risk to Mr. Knight's health created by an inadequate supply of sterile catheters, will not increase the number of sterile single use catheters for Mr. Knight.

62.     Recently, Mr. Knight was brought to a hospital emergency room because of a high fever from a UTI.

63.     Test results revealed that the UTI bacteria had transmitted into Mr. Knight's blood stream, demanding six (6) days of hospitalization and treatment.

64.     Even more recently, Mr. Knight was again brought to Albany Medical Center due to a 102 degrees fever and a UTI, demanding in another seven (7) days of hospitalization and treatment.

65.     After a bladder exam, the urologist concluded that Mr. Knight must catheterize himself six (6) times per day, every (4) hours, to lessen the pressure in or on the bladder.

66.     The urologist further noted that Mr. Knight should receive 6 new, sterile catheters per day—not reused ones.

67.     Dr. Lee then ordered Mr. Knight 4 catheters per day.

68.     Two days after the fact, Mr. Knight was told that the 4 catheters were only approved from July 24, 2018 – July 26, 2018.

69.     Since last week, Mr. Knight has still been receiving only one catheter per day.

70.     Mr. Knight was excluded from programming, a meeting with an attorney and other services due to his preventable illness.

**Wayne Stewart**

71.     Plaintiff Wayne Stewart had been catheterizing himself for sixteen (16) years prior to his incarceration in 2017.

72.     As regular matter of course, Mr. Stewart used between 4 and 7 single use catheters, along with sterile gloves, lubricant and sterilizing fluid for his penis, hands and other nether regions every single day before his incarceration.

73.     Mr. Stewart was able to get sterile supplies through Medicaid programming and hospital emergency rooms before his detention and incarceration.

74.     Mr. Stewart suffered from several UTIs and more serious resulting infections when he was housed at Rikers Island, due to an inadequate supply of sterile, single use catheters and supplies.

75.     Mr. Stewart believed that the standard of care and supplies would be more reasonable once he was transferred to the custody of the State.

76.     However, despite his protests and grievances, DOCCS currently supplies Mr. Stewart with only three single use catheters per day, which is not enough to reasonably accommodate his disability.

77.     Mr. Stewart is forced to try and clean one or two of his daily single use catheters with whatever soap and water are available to him in his cell.

78.     Such exertions are generally insufficient as the water is not hot enough to allow sterilization, the soap is not antibacterial and many elements of the catheter, including the tubing, cannot be sufficiently cleaned without submersion in sterilizing fluid.

79.     Mr. Stewart, like many inmates dependent on catheters, often attempts to trade items to other inmates for sterile catheters or attempts to get sterile catheters from other means in a desperate effort to obtain sterile catheters and avoid preventable infections.

80.     Recently, Dr. Chung Lee told Mr. Stewart that his three per day supply would be cut down to one per day.

81.     Mr. Stewart insisted on continuing to receive three catheters per day, as he already has contracted several UTIs since arriving at DOCCS last year.

82.     Mr. Stewart has told Dr. Lee that three catheters per day is insufficient to reasonably accommodate his disability as he requires four to seven sterile catheters and supplies each day.

83.     Mr. Stewart has grieved the fact that he only receives three catheters per day and has discussed the deficiency with Dr. Lee repeatedly.

84.     DOCCS does not provide Mr. Stewart with gloves or other medical supplies to ensure the sterility of his hands and body parts when handling and inserting the catheter.

85.     When Mr. Stewart recently complained of symptoms of a UTI, medical personnel did not run a test until thirty (30) days after his initial complaint.

86.     The symptoms associated with the UTI were quite painful and interfered with Mr. Stewart's daily activities.

87.     Mr. Stewart's pain from the UTI was often so unbearable that he could not sit in his wheelchair and he had to remain bedridden.

88.     Mr. Stewart did his best to treat his symptoms with prison homeopathic remedies while waiting to get tested for a UTI and to receive adequate treatment.

89.     Mr. Stewart was at great risk of the UTI infection infiltrating his blood stream and causing a severe infection.

90.     Mr. Stewart was excluded from normal programming and activities for days at a time due to preventable UTIs and the lack of testing and treatment.

**Shannon Dickinson**

91.     Plaintiff Shannon Dickinson is also a paraplegic with neurogenic bladder.

92.     Mr. Dickinson must catheterize himself 5 to 6 times per day.

93.    Upon his "intake" to DOCCS in 2016 Mr. Dickinson was given a box of single use catheters which was replenished as needed.

94.    However, once DOCCS transferred Mr. Dickinson to a permanent housing unit his supply of daily catheters was greatly curtailed.

95.    Upon entering Shawangunk, Mr. Dickinson was receiving three catheters per day.

96.    DOCCS quickly decreased Mr. Dickinson's daily catheters to two catheters per day with surgical lubricant.

97.    Like Messrs. Stewart and Knight, Mr. Dickinson has to attempt to sterilize and reuse single use catheters in order to empty his bladder.

98.    With only water and soap, Mr. Dickinson cannot adequately wash or sterilize the catheters and must expose himself to the risk of UTIs and other more serious infections.

99.    Mr. Dickinson grieved the reduction in the number of daily sterile catheters.

100.    Mr. Dickinson also addressed the facility health services director at Shawangunk, Dr. Chung Lee, about the deprivation of an adequate number of catheters.

101.    Dr. Lee, despite knowing Mr. Dickinson's history of painful UTIs and the risk that an inadequate supply of sterile catheters created, did not increase the number of sterile single use catheters for Mr. Dickinson.

102.    Most recently at Green Haven, DOCCS reduced Mr. Dickinson's daily catheter supply to one.

103.    Mr. Dickinson has grieved the inadequate number of catheters he receives per day.

104.    When Mr. Dickinson complained directly to DOCCS staff at Green Haven he was told "it is the policy."

105.     Currently, at Green Haven, Mr. Dickinson receives one single use catheter per day, which he attempts to clean and sterilize with Dial® antibacterial soap and water.

106.     Mr. Dickinson has contracted several very painful UTIs due to reusing single use catheters without the means to adequately sterilize them before reuse.

107.     These UTIs and associated symptoms often cause Mr. Dickinson to be bedridden because sitting in his chair with pressure on his kidneys from the back of the chair is excruciating.

108.     DOCCS has repeatedly excluded Mr. Dickinson from programming and other services due to preventable UTIs.

109.     Recently, Mr. Dickinson has begun to experience stabbing pain upon insertion of catheters due, in part, to multiple UTIs and permanent issues resulting from repeated infections.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

110.     The specific experiences of the named Plaintiffs may differ somewhat due to the number of UTIs and other preventable illnesses caused by unsterile catheterization, but the injuries suffered are common to the class of prisoners who require multiple, daily sterile catheterization and illustrate a pattern of Defendants' failure to reasonably accommodate.

111.     Plaintiffs are a class of inmates in the custody of the NYS DOCCS prison system who suffer from a variety of disabilities that effect their bladder function.

112.     Due to Plaintiffs disabilities, they must catheterize themselves to empty their bladders four to seven times per day.

113.     Defendants have not and do not provide Plaintiffs with an adequate number of single-use catheters per day nor adequate supplies to effectively clean their genital area and hands before insertion.

114.    The denial of these reasonable accommodations leads Plaintiffs to acquire preventable Urinary Tract Infections ("UTIs"), which sometimes manifest into higher-risk and potentially lethal infections.

115.    A UTI is an infection of the urinary system and can infect the urethra, bladder, ureters, and kidneys.

116.    UTIs cause painful urination, pressure, pain or spasms in the back or the lower abdomen; chills, fatigue, fever, and vomiting.

117.    UTIs can develop due to unclean catheterizations conducted without careful and complete cleaning of all items or body parts.

118.    UTIs develop when the urinary tract becomes infected by bacteria through means of insertion of the catheter, reflux of infected urine from the drainage bag, or from tubing inserted into the bladder when there is inappropriate catheter management.

119.    If not treated in a timely or effective manner a UTI can lead to urosepsis, a severe and serious infection of the bloodstream.

120.    Urosepsis can develop into septic shock, causing the patient's blood pressure to drop and resulting in life-threatening consequences.

121.    The individual named Plaintiffs and others similarly situated contracted preventable UTIs, urosepsis and related complications due to an inadequate number of clean single use catheters, supplies and/or slow or inadequate treatment after developing a UTI.

122.    DOCCS could have easily prevented Plaintiffs' painful UTIs and hospitalizations if it had provided the patients with an adequate number of single-use catheters per day and necessary supplies.

123.    Incontinent patients should catheterize every 4 to 6 hours, or 4 to 6 times per day.

124.    Notwithstanding this widely accepted standard, DOCCS and its doctors repeatedly refuse to supply an adequate number of single-use catheters despite an awareness of reoccurring painful UTIs and resulting pain and illness suffered by their patients.

125.    Plaintiffs are persons housed within New York State DOCCS Correctional Facilities, who require the use of daily, multiple catheters to empty their bladders due to a variety of disabilities that directly affect the major bodily function of urination.

126.    Plaintiffs bring this lawsuit on behalf of themselves and all present and future prisoners and detainees with bladder function disabilities who are or will be housed in New York State Correctional Facilities and require multiple daily catheterization to empty their bladders.

127.    Upon information and belief, DOCCS currently houses hundreds of patients whose disabilities demand that they require daily, multiple catheterizations, either due to neurogenic bladder or other ailments that effect their ability to empty their bladders.

128.    According to DOCCS Directive 2614, "Reasonable Accommodations for Inmates with Disabilities," requests for medical treatment . . . prosthetic devices, bottom bunk permits, or any other item for daily living are not considered reasonable accommodations and should not be requested through the reasonable accommodation process.

129.    Requests for sterile catheters must go through medical department personnel.

130.    According to DOCCS Directive 4009, "Minimum Provisions for Health and Moral," the following relevant items are provided to each patient for personal hygiene: bar of soap, drinking cup and a roll of toilet paper.

131.    Individual patient cells are not sterile or even particularly clean environments.

132.    Incarcerated patients receive two clean cloth towels per week and one clean washcloth.

133.    Incarcerated patients have no way of getting their own medical supplies and are completely dependent on DOCCS to supply necessary medical supplies.

134.    Given the reality of lack of cleanliness in individual cells, sterile catheters are essential to preventing infection and related illness in patients dependent on catheterization.

135.    Upon information and belief, hundreds of patients are receiving an inadequate supply of sterile catheters and necessary supplies on a daily basis.

136.    Upon information and belief, hundreds of patients have grieved the inadequate supply of daily single use catheters through the Grievance program and/or directly to DOCCS physicians.

137.    Upon information and belief, the Inmate Grievance Response Committees ("IGRC") and Superintendents at facilities respond to most grievances related to medical treatment, including inadequate supplies of sterile catheters, with pat responses that medical issues should be addressed through the "sick call" program or with the patient's physician and not through the grievance system.

138.    At least one response to a grievance regarding inadequate catheters included the admission that "the policy in question allows for one sterile straight catheter to be issued per day. The catheter should be washed in warm soapy water rinsed with clean water and dried with a clean towel/paper towel after each use."

139.    Upon information and belief, when patients first complain about the symptoms of a UTI it can take several days if not weeks for DOCCS to arrange for appropriate urinalysis and testing.

140.     Upon information and belief, hundreds of patients are exposed to the risk of UTIs and suffer from preventable UTIs, urosepsis and other related ailments due to unsanitary catheterizations.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF

### Title II, ADA - 42 U.S.C. §12131 *et seq.*

*(Against Defendant DOCCS, Dr. Keonigsmann, Dr. Dinello, Dr. Bozer, Dr. Hammer, Dr. Mueller, Dr. Lee and John Does MD 1-24 in their official capacities)*

141.     Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth herein.

142.     Plaintiffs are inmates in the custody of Defendants NYS DOCCS.

143.     Defendant NYS DOCCS is a public entity as defined in 42 U.S.C. § 12131(1)(B).

144.     Plaintiffs suffer from disabilities related to their urogenital tracts which inhibit their ability to empty their bladders without the use of catheterization.

145.     Plaintiffs are qualified individuals with disabilities and satisfy the eligibility requirements for receiving services and participating in programs and activities available to inmates in the custody of Defendant NYS DOCCS, as stated in 42 U.S.C. § 12102(2) and 42 U.S.C. § 12131(2).

146.     In implementing and enforcing a policy that deprives patients with bladder disabilities of sufficient sterile catheters and supplies, DOCCS and its administrative doctors fail to reasonably accommodate patients with urogenital disfunction and disabilities.

147.     Patients who need multiple daily sterile catheterizations often cannot and/or do not attend programs and services due to the need to sterilize catheters which they cannot even attempt in most environments.

148.    DOCCS' failure to reasonably accommodate patients' disabilities and related incontinence with sterile catheters and supplies unnecessarily subjects patients to UTIs, severe pain and related infections and illnesses.

149.    The symptoms of these avoidable illnesses unnecessarily cause the patients to suffer severe pain, sometimes for weeks, and sometimes leave them bed-ridden or hospitalized, thus excluding them from programs and services for which they are otherwise eligible.

150.    Defendant DOCCS and its administrative doctors fail to accommodate Plaintiffs' disabilities in violation of 42 U.S.C. § 12131 *et seq.*

## SECOND CLAIM FOR RELIEF

**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*.**

***(Against Defendant DOCCS, Dr. Koenigsmann, Dr. Dinello, Dr. Bozer, Dr. Hammer, Dr. Mueller, Dr. Lee and John Does, MD 1-54 in their official capacities)***

151.    Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth herein.

152.    NYS DOCCS accepts financial assistance from the United States government.

153.    Defendant NYS DOCCS is subject to the non-discrimination requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

154.    Plaintiffs are inmates in the custody of Defendant NYS DOCCS.

155.    AS state prisoners, all Plaintiffs meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendant NYS DOCCS.  42 U.S.C. § 12102(2); 42 U.S.C. § 12131(2).

156.    Plaintiffs suffer from disabilities related to their urogenital tracts which inhibit their ability to empty their bladders without the use of catheterization.

157.     Plaintiffs are qualified individuals with disabilities and satisfy the eligibility requirements for receiving services and participating in programs and activities available to inmates in the custody of Defendant NYS DOCCS, as stated in 29 U.S.C. § 794, *et seq*.

158.     Defendants failed to provide Plaintiffs with enough sterile catheters and supplies to accommodate their disabilities.

159.     These failures to accommodate caused Plaintiff unnecessary pain and suffering and resulted in exclusion from programming and services available to non-disabled inmates.

160.     Defendants discriminated against Plaintiffs on the basis of their disabilities in violation of Section 504 of the Rehabilitation Act.

## THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – *Monell* Claim

*(Against Defendant DOCCS, Dr. Koenigsmann, Dr. Dinello, Dr. Bozer, Dr. Hammer, Dr. Mueller, Dr. Lee and John Does, MD 1-54 in their official capacities)*

161.     Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth herein.

162.     Plaintiffs are a class of disabled patients who require multiple daily catheterizations to empty their bladders.

163.     Sterile catheters and supplies are necessary to perform these catheterizations and decrease the risk of infection and related illnesses.

164.     The widely accepted medical standard is that an incontinent patient should catheterize 5 to 7 times per day with sterile supplies to avoid infection.

165.    DOCCS and its administrative doctors and physicians have adopted and implemented a policy which restricts the number of catheters to patients.

166.    DOCCS and its administrative doctors allow the deprivation of an adequate number of sterile catheters despite knowing that patients suffer from UTIs and hospitalizations as a result of infections from unsterile catheterizations.

167.    The number of single use catheters allowed per disabled patient is not enough to reasonably and safely accommodate patients' daily requirements to empty their bladders.

168.    Due to the insufficient amount of single use catheters or sterilizing supplies, Plaintiffs suffer avoidable and severe illnesses including UTIs, urosepsis and other related infections and illnesses.

169.    Plaintiff suffer severely and unnecessarily due to DOCCS' policy regarding catheters.

### FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – *Failure to Treat*

**(Against Dr. Dinello, Dr. Bozer, Dr. Hammer, Dr. Mueller, Dr. Lee and John Does, MD 1-54 in their official and individual capacities)**

170.    Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth herein.

171.    Defendant doctors are licensed practitioners of medicine in the State of New York and are well-aware of the accepted medical standard of providing sterile catheters to patients who require multiple daily catheterizations.

172.    The failure to provide five to seven catheters is a denial of adequate medical care, causing serious injury in the form of avoidable and painful UTIs and other resulting infections and illnesses in Plaintiffs.

173.    Defendant doctors have heard repeatedly from patients through grievances and personal appeals that the denial of adequate medical care in the form of an insufficient number of sterile catheters causes injury and illness to the Plaintiff patients.

174.    Defendant doctors also must approve and review hospitalizations for UTIs and related infections in Plaintiffs and are aware of the serious consequences to Plaintiffs' health.

175.    Despite this knowledge Defendant doctors are deliberately indifferent to the serious medical needs of the Plaintiffs.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff requests that the Court grant the following relief against Defendant DOCCS and Defendant DOCCS' physicians in their official and individual capacities:

176.    Certifying this action as a class action under Fed. R. Civ. P. 23(a) and 23(b)(1), (b)(2), with the class as defined above.

177.    Adjudging and declaring that the policy, practice, omission and conditions described above are in violation of the rights of the Plaintiffs and members of the Class under the ADA, the Rehabilitation Act, and the Eighth Amendment.

178.    Permanently enjoining Defendants, their agents, employees, and all persons acting in concert with them from subjecting Plaintiffs and the members of the Class to the illegal policies, practices, omissions and conditions described above.

179.    Directing Defendants to conduct individualized assessments of Plaintiffs and members of the Class to determine the number of sterile catheters and supplies required per day to

best ensure each individual patient's health and freedom from preventable infections, injury and illnesses resulting from the use of unsterilized catheters.

180.    Directing Defendants to ensure that each Plaintiff and members of the Class have sterile catheters to take with them to any programs and services so they can participate.

181.    Awarding compensatory damages for the pain and suffering of Plaintiffs and members of the Class, including compensation for garden variety emotional damages.

182.    Awarding Plaintiffs reasonable attorneys' fees, costs, disbursements and other litigation expenses, pursuant to, 29 U.S.C. § 794(b), 42 U.S.C. § 12205 and 42 U.S.C. § 1988.

183.    Retaining jurisdiction over this case until Defendants have fully complied with the orders of this Court and there is reasonable assurance that Defendants will continue to comply in the future.

184.    Ordering such other and further relief as the Court may deem just and proper.


Dated: August 9, 2018

**LAW OFFICE OF AMY JANE AGNEW, P.C.**

By: *__/s/ AJ Agnew__*
Amy Jane Agnew, Esq.
*Counsel for Plaintiff*
24 Fifth Avenue, Suite 1701
New York, New York 10011
(973) 600-1724
aj@ajagnew.com